**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Elaine G.,[1]

          Plaintiff,

      v.

Acting Commissioner of Social Security,

          Defendant.

Case No. 2:24-cv-01264-BNW

**ORDER**

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff's application for disability benefits under Title II of the Social Security Act. Plaintiff moves this Court to reverse the Commissioner's decision and award benefits. ECF No. 28. The Commissioner opposes and asks this Court to affirm the Administrative Law Judge's decision, and in the alternative, to remand for further proceedings. ECF No. 30. Plaintiff replied. ECF No. 31. Because portions of the ALJ's decision were not supported by substantial evidence and the credit-as-true test was not satisfied, the Court remands for further proceedings.

**I.      BACKGROUND**

On January 28, 2021, Plaintiff filed for disability insurance benefits under Title II of the Social Security Act, alleging an onset date of July 24, 2020. Administrative Record ("AR") 20, 210. Plaintiff's claim was denied initially and upon reconsideration. AR 82, 91. A hearing was held before an Administrative Law Judge ("ALJ") on February 15, 2023. AR 47–81. In July of 2023, the ALJ found that Plaintiff was not disabled. AR 20–34. Plaintiff appealed that decision to the Appeals Council, which denied her request. AR 1–6. Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). ECF No. 1.

/ /

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

## II.    STANDARD OF REVIEW

Administrative decisions in Social Security disability-benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action. . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commisioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

*v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, the issue before the Court is not whether the Commissioner could have reasonably reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### A. Disability evaluation process and the ALJ decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected. . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual also must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, the

3

ALJ will make a finding of non-disability. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then the ALJ makes a finding of non-disability. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy

4

within the last 15 years. The work also must have lasted long enough for the individual to learn the job and to have performed an SGA. If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then the ALJ makes a finding of non-disability. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

*Here*, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 24, 2020, the alleged onset date. AR 23.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, carpal tunnel syndrome, and left peroneal neuropathy/radiculopathy. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25.

Before moving to step four, the ALJ concluded that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and the claimant is able to lift and/or carry 20 pounds occasionally and ten pounds frequently, sit unlimitedly, stand for four hours, walk for four hours (for a total of four hours), and push and pull as much as she can lift and carry. The claimant can operate foot controls with the bilateral feet occasionally. She can operate hand controls with the bilateral hands frequently. She can occasionally reach overhead with the bilateral arms and can frequently reach in all other directions bilaterally. She is able to handle, finger, and feel frequently with the bilateral hands. The claimant can climb ramps and stairs occasionally, but should never climb

ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She should never work at unprotected heights, and can work around moving mechanical parts and operate a motor vehicle occasionally. She can work in extreme cold, extreme heat, and with vibration occasionally.

AR 25–26.

At step four, the ALJ found that Plaintiff was capable of performing PRW as an appointment clerk, order clerk, and customer complaint clerk because this work does not require the performance of work-related activities precluded by the claimant's RFC. AR 32.

At step five, the ALJ found that Plaintiff has not been under a disability from July 24, 2020, through the date of the decision. AR 33.

## III.    ANALYSIS

**A. Substantial Evidence does not support the ALJ's RFC finding regarding Plaintiff's ability to reach, handle, and finger with her left upper extremity as to the time period between July 24, 2020, and May 3, 2022.**

When determining the claimant's capacity for work, the ALJ must assess all evidence including the claimant's statements, others' descriptions of the limitations, and medical reports. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3). "The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). To this extent, "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022).

The RFC must be "consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174. As a lay person, the ALJ cannot "act as his own medical expert" in "interpreting raw medical data in functional terms." *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."). ALJs are not permitted to render their own medical opinions or independently assess clinical findings. *Linda Lee E. v. O'Malley*,

6

No. 23-CV-770-LR, 2024 WL 4140607, at *6 (S.D. Cal. Sept. 10, 2024) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999)) ("It is well-settled that an ALJ may not render her own medical opinion and is not empowered to independently assess clinical findings.")).

Plaintiff challenges the ALJ's RFC finding that she could frequently operate hand controls bilaterally; frequently reach in all other directions bilaterally; and frequently handle, finger, and feel bilaterally. AR 25–26. Plaintiff further challenges the ALJ's finding that she could occasionally reach overhead with the bilateral arms. *Id.* She argues that the ALJ made several errors in reaching this conclusion, including that the ALJ: (1) improperly assessed the supportability and consistency of the medical opinions of Drs. Prothro, Humphries, and Nickles; (2) failed to separately assess Plaintiff's ability to use her left hand prior to the May 2022 carpal tunnel release surgery; (3) did not provide substantial reasons supporting her RFC regarding the period after the May 2022 surgery; and (4) failed to consider how Plaintiff's cervical spine impairments affected her ability to use her left upper extremity. ECF No. 28 at 13–18.

      *1.   The ALJ did not err in considering the consistency of the medical opinions.*

An ALJ's decision to discredit medical opinion evidence must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The ALJ must "articulate . . . how persuasive" she finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [she] considered the supportability and consistency factors" in reaching these findings. *Id.* § 404.1520c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). A medical opinion is less persuasive when it is not consistent with the other evidence. *Id.*

Dr. Prothro conducted a physical examination in August 2021. AR 628. He opined that Plaintiff could occasionally reach (overhead and lateral), finger, and handle. AR 627–28. Dr. Humphries reviewed the record and evaluated Plaintiff's physical residual functional capacity on

7

initial determination in October 2021. AR 84–89. He opined that Plaintiff could occasionally reach (overhead and laterally), handle, and finger with the left hand. AR 88.

In November 2021, Plaintiff reported increased left wrist and hand pain following a motor vehicle accident. AR 676. She had positive Tinel's and carpal tunnel compression tests in January 2022 and March 2022. AR 677, 744. She received carpal tunnel syndrome release surgery on May 3, 2022. AR 758. At a follow-up appointment in June 2022, Plaintiff reported that her preoperative pain was "completely better after the surgery" and that she was "happy with the results." AR 730. The doctor noted that Plaintiff had full range of motion of her left wrist and fingers. AR 730. Still, the doctor stated that Plaintiff was incapable of returning to work at this time and would need to continue physical therapy as she was not at full strength. AR 731. Physical therapy notes from August through September 2022 show that Plaintiff's strength, range of motion, and mobility improved. AR 805–38, 870–92.

Dr. Nickles reviewed the record and evaluated Plaintiff's physical residual functional capacity on reconsideration in June 2022. AR 98. He found that Plaintiff could occasionally reach overhead and finger with the left upper extremity. AR 98. He did not limit her ability to reach in front/laterally, handle, or feel. *Id.*

The ALJ found these opinions somewhat consistent with the physical examinations, like evidence of positive Tinel's on the left side. AR 31. However, the ALJ noted that Plaintiff "can perform frequent reaching, handling and fingering bilaterally based on the evidence of examinations documenting normal motor strength and tone, normal movement of extremities, normal gait and station, and normal sensation and reflexes." *Id.* (citing AR 661) The ALJ further found that the claimant improved with surgery and physical therapy. *Id.* She stated that Drs. Humphries and Prothro did not account for the claimant's improvement following carpal tunnel surgery and physical therapy. *Id.*

Here, the ALJ properly considered the consistency of the above medical opinions. She explained that the positive Tinel's were consistent with the opinions but that medical notes showing Plaintiff had normal motor and normal grip strength were inconsistent with the

8

opinions. Plaintiff argues that the notes regarding normal motor and grip strength came from a visit in which Plaintiff's chief complaint was abdominal issues, and thus these notes were less persuasive than the positive Tinel's. In other words, Plaintiff questions the ALJ's interpretation of the evidence. But the Court must defer to the ALJ's interpretation, so long as it is rational. *See Burch*, 400 F.3d at 679. Here, despite the type of visit, the medical notes do show that Plaintiff had normal motor and grip strength, and it was rational for the ALJ to conclude that this was not entirely consistent with medical opinions stating Plaintiff was limited in her left hand.

As to supportability, the ALJ found the opinions of Drs. Humphries and Prothro less persuasive because they pre-dated Plaintiff's carpal tunnel release surgery and thus did not account for her improvement from that surgery. Plaintiff argues that this was improper because the ALJ needed to separately consider the evidence prior to her May 2022 surgery. Because Plaintiff's arguments regarding supportability depend on her arguments regarding the ALJ's consideration of the period prior to May 2022, the Court considers this argument below.

    2.   *The ALJ erred by not separately considering the period of time before Plaintiff's carpal tunnel release surgery (July 24, 2020, through May 3, 2022).*

Plaintiff contends that the ALJ erred by not separately considering the opinions of Drs. Humphries and Prothro during the period of time from July 24, 2020 through May 3, 2022 (when Plaintiff underwent carpal tunnel release surgery). The Commissioner does not squarely address this issue, but rather argues that the ALJ's finding is supported by substantial evidence because she found the medical evidence showed (1) few deficits in Plaintiff's ability to use her left hand/arm during this period and (2) little treatment as to her left hand/arm during this period. ECF No. 30 at 4.

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In *Smith v. Kijakazi*, the Ninth Circuit held that the ALJ erred by failing to consider whether the claimant was disabled for a qualifying, earlier portion of the

multi-year period. 14 F. 4th 1108, 1110 (9th Cir. 2021). In *Smith*, the claimant suffered mental health issues following the deaths of his fiancée, mother, and grandmother, all of which occurred during a two-month period. The record reflected that the claimant's symptoms varied during the years following these deaths but dramatically improved during the later years of the disability period. *Id.* The ALJ found that the claimant was not disabled.

Relevant to the discussion here, the ALJ in *Smith* discredited two medical opinions because (1) they did not consider the claimant's later improvement, and (2) occurred very shortly after the three deaths. *Id.* at 1114–15. The Ninth Circuit reversed and remanded. It explained that the ALJ erred in "failing to consider whether the opinions of Drs. Wheeler and Krueger were reliable evidence of [the claimant's] functioning in that earlier period and instead seeking only a single medical opinion of [the claimant's] general capacity over the entire period." *Id.* at 1116.

Here, Drs. Humphries and Prothro considered the evidence prior to Plaintiff's carpal tunnel release surgery, and they opined that Plaintiff could only occasionally reach, handle and finger with her left hand. AR 88, 627–28. Dr. Prothro noted that Plaintiff experienced carpal tunnel syndrome as early as August 2021. AR 624. Plaintiff had positive Tinel's and carpal tunnel compression tests in January 2022 and March 2022. AR 677, 744. The ALJ erred in discounting the opinions of Drs. Humphries and Prothro as to Plaintiff's left arm and hand limitations during the time between July 2020 and May 2022 because she rejected them, in part, based on the fact that they did not consider improvement from Plaintiff's surgery. *See Johnson v. Kijakazi*, No. 21CV01284-NLS, 2022 WL 3362051 (S.D. Cal. Aug. 15, 2022) (applying *Smith* and finding that ALJ erred in discrediting medical opinions as to the claimant's right arm limitations during a discrete time). As laid out in *Smith*, the ALJ must consider whether the opinions of Drs. Humphries and Prothro were reliable evidence of Plaintiff's left hand/arm functioning during the earlier period from July 2020 through May 2022. The Commissioner's argument that substantial evidence shows Plaintiff was not disabled in this earlier period is not relevant, as the ALJ did not consider the medical opinions and evidence as to only this earlier period or reach a conclusion about Plaintiff's limitations during this period.

10

This error is not harmless as it may be consequential to the ultimate disability determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The ALJ could find that the opinions of Drs. Humphries and Prothro are persuasive evidence of Plaintiff's left hand/arm functioning during this earlier period and conclude that she could only use her left hand occasionally. The vocational expert testified that, in his experience, if Plaintiff could only use her left hand occasionally, she would likely be unable to perform her past work. AR 77. Thus, the error is not harmless.

   3.   *The ALJ's RFC finding post-surgery is supported by substantial evidence.*

Plaintiff makes four arguments regarding the period of time following her carpal tunnel syndrome surgery. First, she argues that the ALJ erred by failing to recognize the projected nature of Dr. Nickles' residual functional capacity assessment. ECF No. 28 at 16 (citing *Romero v. O'Malley*, 2024 WL 4919515, at *4–5 (9th Cir. Nov. 29, 2024)). Second, she argues that the ALJ ignored records showing that Plaintiff continued to need physical therapy after her carpal tunnel surgery and that those physical therapy records documented significant limitations post surgery. *Id.* Third, Plaintiff argues the ALJ ignored evidence about Plaintiff's cervical impairments when formulating her left upper extremity RFC. ECF No. 28 at 16. And fourth, Plaintiff argues that "[c]ontrary to the ALJ's statements, she did report excessive somnolence with oxycodone and other medications." *Id.* (citing AR 982, 716)

First, the ALJ did not err by failing to recognize the projected nature of Dr. Nickles' residual functional capacity assessment because, unlike in *Romero*, the ALJ found that Plaintiff's condition improved. *See Romero v. O'Malley*, No. 23-55292, 2024 WL 4919515, at *2 (9th Cir. Nov. 29, 2024); AR 31.

Second, the ALJ did not ignore the physical therapy records. The ALJ specifically stated that Plaintiff showed good relief and improvement from physical therapy. AR 31–32. She cited numerous physical therapy records, noting Plaintiff's improved grip strength and function. *See* AR 32 (citing AR 808, 813, 821, 828, 830, 876, 886, 892–93). As discussed above, the physical therapy notes did show that Plaintiff's left hand/arm strength, range of motion, and mobility

11

improved. AR 805–38, 870–92. Plaintiff does not explain what "significant limitations" the ALJ supposedly ignored, or how the limitations undermined the ALJ's opinion. In any event, the ALJ's interpretation of the physical therapy records was rational, and her conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Third, the ALJ properly considered Plaintiff's cervical spine impairments. The ALJ found that as to Plaintiff's "cervical degenerative disc disease and her carpal tunnel syndrome, there is no indication that she is as debilitated as alleged" given her carpal tunnel surgery was successful and she reported relief from injections and medication. AR 30. The ALJ further noted that Plaintiff did not appear to contemplate surgery for her cervical spine, and that her participation in physical therapy, travelling, and cutting hedges were not consistent with the ability to only occasionally reach in other directions. *Id.*

The ALJ explained that the physical therapy notes indicated improvement. AR 805–38, 870–92. Plaintiff cites to a September 2022 medical note from the Nevada Spine Clinic indicating that Plaintiff had greater than 60% pain relief from a cervical injection but that the relief only lasted about a week. AR 980. While the ALJ did not specifically cite to this medical note, she repeatedly cited to this medical record, noting that Plaintiff reported that medication, epidural injections, and physical therapy helped her pain. AR 29. Indeed, the ALJ cited to medical notes from the Nevada Spine Clinic during the months of October through December 2022 (so, after the medical note Plaintiff cites to) that "epidurals help and meds help" (AR 969), Plaintiff "is status-post right-sided C3-4 TESI with 50% relief of symptoms addressed" (AR 971), Plaintiff "presents after injection of the cervical spine, to give her a great amount of relief" (AR 973), and that she finds "great relief" in physical therapy (AR 978). The ALJ was not required to discuss every piece of evidence she considered. *Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003).

Although Plaintiff disagrees with the ALJ's interpretation of the evidence that she improved, the ALJ's findings were rational and supported by substantial evidence given the

above medical notes indicating improvement and the fact that Plaintiff did not pursue further treatment for her cervical impairments. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that impairments that can be controlled with treatment are not disabling); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). The ALJ's RFC finding is further supported by the fact that Plaintiff's carpal tunnel release surgery was successful.

Fourth, Plaintiff's argument that "[c]ontrary to the ALJ's statements, she did report excessive somnolence with oxycodone and other medications" is undeveloped. ECF No. 28 at 16 (citing AR 982, 716). The Court is confused by this argument given that the ALJ *did* find that Plaintiff noted somnolence with oxycodone. AR 29. However, the ALJ found that this was an isolated instance and that there was no indication Plaintiff discussed altering this medication. *Id.* Plaintiff cites one other medical record in which she reported "feeling loopy while taking Seroquel," but this appears to be another isolated instance. AR 716. The doctor stated that Plaintiff should decrease her Seroquel tablet and take it once a day at bedtime. *Id.* Plaintiff does not cite to any other issues with this medication, nor does she argue as much. The ALJ did not err here.

**B. The ALJ's RFC finding that Plaintiff could sit unlimitedly is not supported by substantial evidence.**

Plaintiff argues that the ALJ's RFC finding that Plaintiff had no limitation in sitting lacks substantial evidence because no medical opinion in the record found that she could sit for more than six hours in a work day. ECF No. 28 at 18. She further argues that the other reasons the ALJ cited for her ability to sit unlimitedly, like travel and using hedge clippers and a stationary bike, did not constitute substantial evidence. The Commissioner argues that substantial evidence supports the ALJ's decision because her finding that Plaintiff could "sit unlimitedly" meant that she could sit for approximately six hours in an eight-hour workday, which is supported by numerous medical opinions. ECF No. 30 at 12. Plaintiff disagrees with the Commissioner's

interpretation, arguing that the Commissioner's argument makes assumptions that are contradicted by the ALJ's instruction to the vocational witness regarding "unlimited sitting." ECF No. 31 at 10.

Dr. Humphries found that Plaintiff could sit "about six hours in an eight hour workday." AR 87. Dr. Nickles also found that Plaintiff could sit "about six hours in an eight hour workday." AR 98. Dr. Grover, Plaintiff's treating physician, opined that Plaintiff could sit three to four hours in an eight-hour workday. AR 1030.

The ALJ found that there were isolated reports of difficulty sitting but that Plaintiff also reported significant benefit from treatment. AR 30. The ALJ noted that Plaintiff was able to travel and use hedge clippers and a stationary bike. AR 30. The ALJ further found that Plaintiff's ability to sit without limit is supported by examinations that do not indicate frequent adjusting or distress. AR 30. The ALJ stated that Plaintiff's relief from physical therapy strongly supported her ability to sit unlimitedly. *Id.* The ALJ further noted that Plaintiff reported significant improvement in her back pain after steroid injections. AR 28 (citing 6F/15, 17, 13F, 10, 24).

The ALJ found that the medical opinions of Drs. Humphries and Nickles regarding Plaintiff's ability to stand, walk, and sit were consistent with some evidence but not consistent with other evidence showing good relief from steroid injections, pain medication, and physical therapy. AR 31. The ALJ further found that the opinion of Dr. Grover was not persuasive because it was completely very recently following her back surgery and did not account for her relief from injections and physical therapy. Importantly, the ALJ found that Dr. Grover's opinion that Plaintiff was only able to sit for three to four hours a day was authored at the same time Plaintiff was reporting great relief with physical therapy.

If someone can perform light work, they can also perform sedentary work. 20 C.F.R. § 404.1567. For sedentary jobs, "being on one's feet is required 'occasionally'," so "periods of standing or walking should *generally* total no more than about 2 hours of an 8-hour workday, and sitting should *generally* total approximately 6 hours of an 8-hour workday." *Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10

14

(S.S.A. 1983). However, the Ninth Circuit has explained that some sedentary jobs may not require walking and/or standing. "Thus, to be physically able to work the full range of sedentary jobs, the worker must be able to sit through most or all of an eight hour day." *Tackett v. Apfel*, 180 F.3d 1094, 1104 (9th Cir. 1999).

As an initial matter, the Court disagrees with the assumption that the ALJ's RFC finding that Plaintiff could sit unlimitedly means that she could sit for about six hours in an eight-hour workday. Here, the ALJ found that Plaintiff could perform light work and sit unlimitedly. AR 29–30. Because Plaintiff could perform light work, she could perform sedentary work. As recognized by the Ninth Circuit, some sedentary jobs may require the worker to sit through most or all of an eight-hour day, and the ALJ did not limit Plaintiff to approximately six hours of sitting in an eight-hour workday. The ALJ found that Plaintiff could "sit unlimitedly," and the Court will not presume differently.

Next, the Court considers whether substantial evidence supported the ALJ's finding that Plaintiff could sit unlimitedly. Plaintiff points to evidence in the record from November 2019 through November 2021 showing that Plaintiff did not find sustained relief. ECF No. 28 at 19. Plaintiff further notes that she needed spine surgery in January 2023. *Id.* at 20 (citing AR 968–69). For the reasons discussed below, substantial evidence does not support the ALJ's finding that Plaintiff could sit unlimitedly.

First, no medical opinion states that Plaintiff could sit unlimitedly. Second, the medical records the ALJ cited to show that Plaintiff found improvement and relief from medication, injections, and physical therapy does not support her RFC finding. Many of the records the ALJ cited state that Plaintiff presented with severe lower back pain. *See, e.g.*, AR 682, AR 687, AR 691. The ALJ's other citations say nothing about lower back pain, and it is unclear whether lower back pain was the subject of the appointment. *See* AR 730, AR 975. Finally, the ALJ cites to one medical record in September 2022 in which Plaintiff reported a little soreness to her back. AR 861. But another record from that exact same month show Plaintiff complaining of ongoing low back pain despite doing physical therapy five days a week. AR 982. And in the three

15

following months, Plaintiff repeatedly reported extreme low back pain and considered surgery. AR 969, 971, 978. Although the medical notes in December 2022 state that epidurals and medication helped Plaintiff, she still sought surgery the next month. AR 968–69. The ALJ's citations to medical notes in which Plaintiff did not frequently adjust or appear to be in distress from sitting while being examined similarly do not support that she could sit unlimitedly. The fact that Plaintiff could sit during the medical appointment does not mean that she could sit "unlimitedly," nor does the ALJ explain otherwise.

Third, the fact that Plaintiff traveled and used hedge clippers and a stationary bike does not constitute substantial evidence for the ALJ to find that Plaintiff could sit unlimitedly. While these activities suggest that Plaintiff could do some sitting, they do not support finding that Plaintiff could sit unlimitedly, especially because the ALJ did not explain how long Plaintiff could engage in these activities. *See Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (finding that "[e]vidence that Tackett took a four-day road trip to California, without more, is insufficient to counter the opinion of Tackett's treating physicians and the ALJ's own medical examiner that Tackett needs to shift positions "every 30 minutes or so.""). Weighing the record as a whole, the ALJ's finding that Plaintiff could sit unlimitedly is not supported by substantial evidence. *See Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998) (explaining that courts must review record as a whole and weigh "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion" in determining whether the Commissioner's findings are supported by substantial evidence.).

This error is not harmless as it may be consequential to the ultimate disability determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). That is, if Plaintiff cannot sit unlimitedly this may affect her ability to perform past relevant work. The vocational expert stated that Plaintiff could perform her past work (except for that of a home attendant) assuming a hypothetical of light or sedentary work and sitting unlimitedly. The vocational expert did not consider whether Plaintiff could perform her past work if she had a limitation on sitting.

**C. While the ALJ erred in discounting Plaintiff's symptom testimony, such error is harmless.**

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* (internal citation and quotation omitted). The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).

If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms "only by offering specific, clear, and convincing reasons for doing so." *Id.* (internal citation and quotation omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (citation omitted); *Thomas,* 278 F.3d at 958 (requiring the ALJ to sufficiently explain why they discounted the claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). That said, if the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

The parties dispute whether the ALJ provided specific, clear, and convincing reasons in discounting Plaintiff's subjective symptom testimony regarding her spine and hand. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 27. However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

17

the medical evidence and other evidence in the record." *Id.* The ALJ offered two main reasons for this finding: (1) inconsistency with objective medical evidence, and (2) daily activities. As to inconsistency with objective medical evidence, the ALJ explained that Plaintiff received treatment that was not consistent with a totally disabled individual and that her surgical procedures, medication, and steroids were generally successful in relieving her symptoms. As to daily activities, the ALJ explained that her ability to travel to San Jose, clean the house, cut hedges, and care for her mother in law were not consistent with the severity of the impairments claimed. AR 27–28.

Plaintiff argues that her treatment was not conservative and only provided temporary improvement, and that her daily activities were not a clear and convincing reason to discount her testimony. The Commissioner responds that the medical evidence and Plainitff's daily activities supports the ALJ's conclusion that Plaintiff's impairments were not as limiting as she claimed.

### 1. Plaintiff's Treatment

To the extent the ALJ may have implied that Plaintiff only underwent conservative treatment, the Court disagrees. The Ninth Circuit has held that narcotics, especially in conjunction with surgery, are not conservative treatments. *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (finding ALJ's reasons for determining conservative treatment unconvincing because Plaintiff used narcotics, took injections for back pain, and underwent surgery); *see also Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (surgery is not conservative treatment); *see also* Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) ("In any event, we doubt that epidural steroid shots to the neck and lower back qualify as conservative treatment"). Plaintiff took opioids, received epidural injections, and underwent surgery for her left hand and spine. AR 58–59, 246, 299, 330, 490, 570, 576, 758, 730–32, 737–39, 1002. To the extent the ALJ may be arguing that Plaintiff received conservative treatment, this was not a clear and convincing reason to reject Plaintiff's symptom testimony. *See* AR 27 ("The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual."). In addition, the ALJ failed to explain how two surgeries, opioid

medication, and injections were not consistent with Plaintiff's claimed impairments.

### 2. Effectiveness of Treatment

Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Thus, an ALJ may reject a claimant's symptom testimony when he has "a gradual improvement in his functioning with" prescribed treatment. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (internal quotation marks omitted) (citing *Warre*, 439 F.3d at 1006). However, "it is not enough for the ALJ to show that the pain was responsive to treatment; the ALJ must show that the pain was 'controlled,' ... i.e., no longer debilitating." *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016).

As to Plaintiff's wrist, the ALJ provided clear and convincing reasons that this pain was controlled. As discussed above, the ALJ specifically stated that Plaintiff showed good relief and improvement from the carpal tunnel release surgery and physical therapy. AR 31–32. She cited numerous physical therapy records following the surgery, noting Plaintiff's improved grip strength and function. *See* AR 32 (citing AR 808, 813, 821, 828, 830, 876, 886, 892–93). As discussed above, the physical therapy notes did show that Plaintiff's left hand/arm strength, range of motion, and mobility improved. AR 805–38, 870–92.

However, as to Plaintiff's spine, the ALJ did not provide clear and convincing reasons that this pain was controlled. As discussed above, Plaintiff did report that medication and epidural steroid injections helped her back pain, *see, e.g.*, AR 969, but it did not control her pain. For example, the same doctor notes that report medications and injections helping also indicate Plaintiff reporting "debilitating neck and low back pain." AR 969. The medical records show a pattern of relief and then the return of intense pain. For example, although Plaintiff reported pain reduction after receiving an epidural steroid injection in June 2021, the record shows that by December 2021, her pain had returned and increased in intensity. Furthermore, she rated her back pain a 10/10 on February 9, 2022, and received a lumbar epidural. AR 703. About one week later, she rated her back pain 10/10 again and received another epidural. AR 701. This

19

happened again in April 2022. AR 748. In September through December of 2022, Plaintiff reported lower back pain despite physical therapy and injections. AR 969, 971, 978, 982. Despite epidurals and medication helping, Plaintiff received back surgery in January 2023. AR 968–69. In sum, Plaintiff's repeated reports of debilitating back pain despite epidurals, medication, and physical therapy, coupled with the fact that she received back surgery, show that her pain was not controlled with this treatment. *See Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) ("The fact that a claimant experienced a brief period of reprieve following treatment does not support a finding that her pain was controlled. Rather, the ALJ must show that the treatment was capable of providing lasting relief.").

### 3. Daily Activities

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (citations omitted). Plaintiff testified that she is right-handed. AR 56. She testified that she cannot sit for long periods of time and needs to take breaks frequently to stretch and use the restroom. AR 58–59. Plaintiff testifies that she has pain in both hands. AR 66. Plaintiff testified that she cared for her mother-in-law until she became bedridden in 2020, and at that point she had someone else come to help care for her. AR 58, 64. Prior to 2020, however, Plaintiff testified that she would feed, clothe, and bathe her mother-in-law. *Id.* The ALJ found that Plaintiff's testimony was not entirely consistent with the following daily activities: traveling to San Jose without flare ups, caring for her mother-in-law in 2020 to 2022 by feeding, clothing, and bathing her, cleaning the house, and cutting hedges. AR 27–28.

As to Plaintiff's trip to San Jose, it is not clear whether this activity was actually inconsistent with Plaintiff's testimony. The ALJ did not inquire or explain whether Plaintiff drove alone, took breaks, how long she sat at one time, or how long the breaks were. As to Plaintiff caring for her mother-in-law, this activity is inconsistent with Plaintiff's testimony. Plaintiff testified that she cared for her mother-in-law until she became bedridden in 2020. However, the ALJ cited medical records in which Plaintiff said she was caring for her mother-in-

law in 2021 and 2022. AR 712 and 724. The ALJ reasonably determined that feeding, clothing, and bathing someone else on a daily and continuous basis was inconsistent with Plaintiff's reported severe impairments in her back, neck, and left hand/arm. As to cleaning the house and cutting hedges, this does not appear to be inconsistent with Plaintiff's testimony. There were only two instances of Plaintiff cutting hedges, and it is likely that Plaintiff cut hedges with her right hand since she testified that she was right-handed. Plaintiff reported little pain in her right hand compared to her left. Similarly, the ALJ did not note how often Plaintiff cleans, if she took breaks, or what type of cleaning she performed. Thus, it is unclear whether Plaintiff's cleaning is inconsistent with her testimony. In addition, the Court recognizes that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Nonetheless, the ALJ's errors regarding Plaintiff's symptom testimony are harmless. The ALJ properly discounted Plaintiff's testimony based on efficacy of treatment (hands) and daily activities (caring for mother-in-law).

### D. The Court will not award benefits because the credit-as-true test has not been met.

When an ALJ rejects evidence without providing legally sufficient reasons, the court may grant a direct award of benefits when certain conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). The three-part analysis of such conditions is known as the "credit-as-true" test. *Id.* The credit-as-true test first asks (1) whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion, and (2) whether there are outstanding issues that must be resolved and whether further administrative proceedings would be useful. *Id.* at 1020; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). When the first two conditions are satisfied, the court then credits the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability. *Treichler*, 775 F.3d at 1101. But even after reaching the third step and crediting the claimant's testimony as true, it is within the court's discretion either

to make a direct award of benefits or to remand for further proceedings. *Id.* at 1101–02.

Plaintiff asks the Court to reverse and remand for a direct award of benefits regarding Plaintiff's ability to use her left hand. ECF No. 28 at 18. She argues that the ALJ erred in substituting her own medical opinion for that of Drs. Humphries and Prothro for the period prior to the carpal tunnel release surgery. *Id.* She further argues that the vocational expert testified that Plaintiff could not perform her past relevant work if she was limited to occasional use of the left upper extremity. *Id.* The Commissioner responds that the record does not show significant treatment for carpal tunnel syndrome during the period before Plaintiff's surgery. ECF No. 30 at 22.

As explained above, the Court finds that at the first step, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Humphries and Prothro as to the period of time between July 24, 2020, and May 3, 2022. At step two, the Court finds that the record is unclear because the ALJ did not reach a conclusion as to Plaintiff's left upper extremity impairments during that specific time period. Thus, there are outstanding issues that must be resolved. Because the credit-as-true test has not been satisfied, the Court remands the case for further proceedings.

On remand, the ALJ is instructed to consider the opinions of Drs. Humphries and Prothro as to Plaintiff's left upper extremity impairments during the period of time between July 24, 2020, and May 3, 2022. The ALJ is further instructed to re-evaluate Plaintiff's residual functional capacity to sit.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

**IV.    CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Remand and/or Reversal (ECF No. 28) is **GRANTED in part and DENIED in part** consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in favor of Plaintiff consistent with this Order and close this case.

DATED: January 20, 2026

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

23